995 So.2d 579 (2008)
N. Reed FINNEY, husband, Appellant/Cross-Appellee,
v.
Jeanne Marie FINNEY, wife, Appellee/Cross-Appellant.
No. 1D07-1813.
District Court of Appeal of Florida, First District.
October 17, 2008.
Rehearing Denied December 3, 2008.
*580 Carroll L. McCauley, Panama City, for Appellant/Cross-Appellee.
Rhonda S. Clyatt, Panama City, for Appellee/Cross-Appellant.
ROBERTS, J.
In this appeal and cross-appeal following a final order of dissolution of marriage, the husband raises four issues on appeal and the wife raises three issues on cross-appeal. With respect to the husband's issues on appeal, we reverse and remand on three of those issues and affirm but remand on the fourth. With respect to the wife's issues on cross-appeal, we affirm on all of those issues without discussion.
At the time of the dissolution of the parties' eight-year marriage, the husband was 55 years of age and the wife was 43 years of age. The parties have one minor child. The husband is a practicing cardiothoracic and vascular surgeon. The wife, although a licensed nurse, is the primary caretaker of the parties' minor child and the CEO of a medical waste disposal business.

Valic Annuity
This Court has de novo review of a trial court's conclusion of law that an asset is a marital asset and is therefore subject to equitable distribution. See Smith v. Smith, 971 So.2d 191, 194 (Fla. 1st DCA 2007).
A trial court is required to set apart to each spouse that spouse's nonmarital assets. See § 61.075(5)(b)1., Fla. Stat. (2006). A nonmarital asset is any asset acquired by either party prior to the marriage. See id.
In the instant case, the trial court classified the husband's Valic annuity as a marital asset. The undisputed evidence, however, shows that the annuity was a nonmarital asset acquired by the husband prior to the marriage. The husband testified that he acquired the annuity in 1993, two years before the marriage, while employed at the Medical College of Georgia. He also testified that, since that time, he had not made any contributions to the annuity. The annuity's account statement corroborated the husband's testimony, providing that the annuity was established as a retirement plan for the college. Moreover, the wife testified that she would agree that the husband acquired the annuity prior to the "legal marriage."
Accordingly, we reverse the trial court's classification of the husband's annuity as a marital asset. On remand, the annuity must be classified as a nonmarital asset and the equitable distribution must be revised accordingly.

Profit Sharing Plan
This Court has de novo review of a trial court's conclusion of law that an asset is a marital asset and is therefore subject to equitable distribution. See Smith v. Smith, 971 So.2d 191, 194 (Fla. 1st DCA 2007).
A trial court has the discretion to value assets as of different dates. See § 61.075(6), Fla. Stat. (2006). A trial court is not, however, afforded the same discretion in regards to determining marital assets. See Guelpa v. Guelpa, 885 So.2d 409, 410 (Fla. 1st DCA 2004); Langevin v. Langevin, 698 So.2d 601, 602 (Fla. 4th DCA 1997). The date for determining marital assets is the earliest date the parties entered into a valid separation agreement *581 or the date the petition was filed. See § 61.075(6), Fla. Stat. (2006).
In the instant case, after the petition was filed, the husband's medical practice made contributions to his profit sharing plan in the amount of $83,000. The trial court's valuation of the profit sharing plan included those contributions. This was error. Because there is no valid separation agreement, the date for determining marital assets is the date the petition was filed. Thus, the contributions made to the husband's profit sharing plan after the date the petition was filed are not marital assets subject to equitable distribution.
Accordingly, we reverse the trial court's classification of the contributions made to the husband's profit sharing plan after the date the petition was filed as a marital asset. On remand, those contributions must be classified as a nonmarital asset and the valuation of the profit sharing plan and the equitable distribution must be revised accordingly.

Child Support
Child support decisions are typically discretionary. See Glasgow v. Wolfe, 873 So.2d 483, 484 (Fla. 1st DCA 2004). However, a trial court's discretion concerning child support is subject to the statutory guidelines set forth in section 61.30, Florida Statutes. See Kareff v. Kareff, 943 So.2d 890, 892 (Fla. 4th DCA 2006). Whether a trial court has complied with the guidelines is a question of law to be reviewed de novo. See id.
In determining child support, a trial court is required to do the following. First, a trial court must determine each parent's gross monthly income. See § 61.30(2), Fla. Stat. (2006). Gross income includes alimony ordered in the marriage before the trial court. See § 61.30(2)(a)9., Fla. Stat. (2006). Second, a trial court must determine each parent's net income by subtracting the statutorily specified allowable deductions from the parents' gross monthly incomes. See § 61.30(3)(a)-(g), Fla. Stat. (2006); § 61.30(4), Fla. Stat. (2006). One such deduction is alimony ordered in the marriage before the trial court. See § 61.30(3)(g), Fla. Stat. (2006). Third, a trial court must determine the parents' combined monthly net income. See § 61.30(5), Fla. Stat. (2006). Fourth, a trial court must determine the child support need by utilizing the statutorily provided schedules. See § 61.30(6), Fla. Stat. (2006). Fifth, a trial court must determine each parent's percentage share of the child support need by dividing each parent's monthly net incomes by the combined monthly net income. See § 61.30(9), Fla. Stat. (2006). Finally, a trial court must determine each parent's dollar share of the child support need by multiplying the minimum child support need by each parent's percentage share. See § 61.30(10), Fla. Stat. (2006).
In the instant case, the trial court found that the husband's gross annual income was $375,000 and the wife's gross annual income was $60,000. The trial court then found that the husband's child support obligation under the guidelines was $1,850 per month. The trial court's calculation of the husband's child support obligation is, however, at odds with the guidelines. The trial court erred in determining only the parties' gross annual incomes and the husband's dollar share of the child support need. The trial court failed to determine the husband's monthly gross income, from which he was entitled to make a deduction for alimony, or the wife's monthly gross income, which should have included alimony. See Weiser v. Weiser, 782 So.2d 986, 987 (Fla. 4th DCA 2001). The trial court also failed to determine the parties' monthly net incomes, their combined monthly net income, their *582 percentage share of the child support need, and their dollar share of the child support need.
Accordingly, we reverse and remand for the trial court to calculate the child support in accordance with the guidelines.

Permanent Periodic Alimony
Although we find no error in the trial court's award of $5,000 per month in permanent periodic alimony to the wife, we note that modification of that award may be appropriate on remand if the revision of the equitable distribution of the marital assets so warrants.
AFFIRMED in part, REVERSED in part, and REMANDED for proceedings consistent with this opinion.
DAVIS and PADOVANO, JJ., concur.